UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-00485 |
| | § | |
| BMH AS-BUILT USA OF TEXAS, | § | |
| INC. | § | **JURY TRIAL** |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF ADMIRAL INSURANCE COMPANY'S**
**SECOND AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Plaintiff Admiral Insurance Company ("Admiral"), and files its Second Amended Complaint for Declaratory Judgment ("Amended Complaint") against Defendants, BMH As-Built USA of Texas, Inc. ("BMH") and Caleb Queen ("Queen"), and would respectfully show this Honorable Court as follows:

## I.
## PARTIES

1. Plaintiff, Admiral, is a Delaware corporation with its principal place of business in Scottsdale, Arizona. Admiral conducts business in the State of Texas as a surplus lines insurer.

2. Defendant, BMH, is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas. BMH has been served and has made an appearance in this case.

3. Defendant, Queen, is an individual resident and citizen of the State of Texas. He has been served and made an appearance in this case.

## II.
## VENUE AND JURISDICTION

4. There is diversity of citizenship between the parties to this civil action, and the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000). As such, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

5. The underlying lawsuit that forms the dispute in this coverage action was pending in Dallas County, Texas. Moreover, BMH is a corporate resident of Dallas County, Texas. Accordingly, venue in this judicial district and division is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2).

## III.
## FACTS GIVING RISE TO DECLARATORY JUDGMENT

6. Admiral incorporates the preceding paragraphs in this Amended Complaint by reference.

7. Admiral issued a commercial general liability insurance policy to BMH, under Policy No. CA000026291-02, with effective dates from January 25, 2018 to January 25, 2019 ("the Admiral Policy").[1]

8. On or about June 7, 2018, BMH was named as a defendant in a bodily injury lawsuit arising in connection with a new residential condominium construction project. This lawsuit was styled *Caleb Queen v. BMH As-Built USA of Texas, Inc., et. al.*, Cause No. CC-18-03034-B, filed in the County Court at Law No. 2, Dallas County, Texas ("the Underlying Lawsuit").[2]

9. BMH tendered the Underlying Lawsuit to Admiral for defense and indemnity under the Admiral Policy.

[1] A copy of the Admiral Policy is attached hereto as Exhibit "A-1."
[2] A copy of Plaintiff's Original Petition is attached hereto as Exhibit "A-2."

10. Admiral has been providing BMH with a defense in the Underlying Lawsuit, and in the subsequent appeal, subject to a reservation of rights, which Admiral is entitled to do under Texas law.

11. Plaintiff's Petition in the Underlying Lawsuit alleged that, "Plaintiff was working on a jobsite controlled by BMH, when a worker employed by Roka Management, Inc. ("Roka"), and under the control of BMH threw a piece of debris off the roof and hit Plaintiff on the head and shoulder."[3] In a pre-trial Motion for Summary Judgment filed by BMH, BMH provided more detail regarding the construction project, and specifically stated that the lawsuit arose from "a construction site injury that occurred at a condominium development."[4] In Plaintiff's Response to Roka's Motion for Summary Judgment, Plaintiff similarly described the event giving rise to the Underlying Lawsuit, by identifying the project as a condominium project.[5]

12. The Underlying Lawsuit was called to trial on Tuesday, February 25, 2025. The jury returned a verdict in the Underlying Lawsuit on Tuesday, March 4, 2025. The Final Judgment confirmed, that "…the jury found that BMH exercised 'some control over the manner in which the forms were removed from the concrete columns at the Destination Condominiums, other than the right to order the work start or stop or to inspect progress or receive reports.'"[6] The final judgment was for $10,902,000, plus interest and costs.[7]

---

[3] Exhibit "A-2" ¶ 6.
[4] Defendant BMH As-Built USA of Texas, Inc.'s Traditional and No-Evidence Motion for Summary Judgment is attached hereto as Exhibit "A-3," p. 1.
[5] Plaintiff's Response to Defendant Roka Management, Inc.'s First Amended No-Evidence Motion for Summary Judgment and verified Motion for Continuance is attached hereto as Exhibit "A-4," p. 1.
[6] Final Judgment in the Underlying Lawsuit, attached hereto as Exhibit "A-5," p. 1.
[7] Exhibit "A-5," p. 3.

## IV.
## THE ADMIRAL POLICY

13. Admiral incorporates the preceding paragraphs in this Amended Complaint by reference.

14. The Admiral Policy provides commercial general liability insurance coverage, subject to its terms, conditions, definitions, limitations, and exclusions. The Admiral Policy states, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** – Who is an Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.
>
> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…
>
> ***
>
> **2. Exclusions**
>
> This insurance does not apply to:

***

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

***

**SECTION V – DEFINITIONS**

***

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

***

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a temporary worker".

***

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of

duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

***

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## RESIDENTIAL CONSTRUCTION ACTIVITIES EXCLUSION (ABSOLUTE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

It is agreed this insurance does not apply to liability arising in whole or in part, either directly or indirectly, out of any past, present or future "residential construction activities" performed by or on behalf of any insureds or others.

For the purposes of this endorsement, "residential construction activities" means any work or operations related to any job or project involving the construction, repair, remodeling, renovation, maintenance, change or modification of single-family dwellings, multi-family dwellings, condominiums, townhomes, townhouses, time-share units, fractional-ownership units, cooperatives, apartments, and/or any other structure or space used or intended to be used as a residence, whether full-time, part-time, live-work combination, vacation, or temporary residence, and regardless of the actual use or occupancy of any such structure or space, whether or not:

**1.** The job or project also includes structures, space, areas and/or units, designed, constructed, sold, leased, occupied or used for any commercial or non-residential purpose; or

**2.** The present or future ownership of any such structure or space by any person or organization is fee simple, joint tenancy, tenancy-in-common, tenancy-in-the-entirety, tenancy-in-partnership, community property, deeded time-share, non-deeded time-share, fractional interest, shareholder interest and/or any other form of common or fractional-interest ownership or management.

It is further agreed that for any claim made or "suit" brought which is excluded under the terms of this endorsement, we will have no obligation to defend, adjust

or investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of or related to such claims.

All other terms and conditions remain unchanged.

***

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONDOMINIUM CONVERSION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

It is agreed this insurance does not apply to liability arising in whole or in part, either directly or indirectly, out of any past, present or future job or project performed by or on behalf of any insured or others involving the construction, repair, remodeling, renovation, maintenance, change or modification of any structure, if the structure is or has been converted, changed or modified at any time by or on behalf of any insured or others to condominiums, townhomes, or townhouses.

It is further agreed that for any claim or “suit” brought which is excluded under the terms of this agreement, we will have no obligation to defend, adjust or investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of or related to such claim or “suit”.

All other terms and conditions remain unchanged.

## V.
## REQUEST FOR DECLARATORY JUDGMENT

15. Admiral incorporates the preceding paragraphs in this Amended Complaint by reference.

16. There exists a bona fide coverage dispute with respect to whether there is a continuing duty to defend BMH in the appeal of the Underlying Lawsuit, and whether there is a duty by Admiral to indemnify BMH for the Final Judgment entered in the Underlying Lawsuit.

17. Admiral seeks a declaration that it has no continuing duty to defend BMH in the appeal of the Underlying Lawsuit under the Admiral Policy, by virtue of the RESIDENTIAL CONSTRUCTION ACTIVITIES EXCLUSION (ABSOLUTE) endorsement.

18. The Texas "Eight-Corners Rule" resolves the duty to defend in most cases. However, Texas courts are permitted to consider extrinsic evidence when there are gaps in the plaintiff's pleadings that make the "Eight-Corners Rule" not determinative of whether a duty to defend exists. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195 (Tex. 2022). In such cases, extrinsic evidence is permissible to fill in gaps in the pleadings when such evidence: (1) goes solely to the issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved. *Id*. at 201-02.

19. In the Underlying Lawsuit there exists a gap in the plaintiff's pleading because it alleges only that the injury occurred at a "jobsite," but does not identify the specific type of jobsite, including the fact that it was a residential jobsite.[8] Extrinsic evidence is permissible in this case to show that this was a condominium project, which qualifies as residential construction activity, and is excluded from coverage by the RESIDENTIAL CONSTRUCTION ACTIVITIES EXCLUSION (ABSOLUTE) endorsement. Extrinsic evidence is permissible in determining the duty to defend because this evidence does not contradict the pleadings, goes only to the coverage issue, and conclusively negates coverage for the Underlying Lawsuit.

[8] *See* Exhibit A-2 ¶ 6.

20. It is undisputed that this was a condominium project. BMH's corporate representative testified that the location where Queen was working at the time of his injury was at the "Destination Condos."[9] He also explicitly confirmed that BMH is "in construction business and we do multifamily projects" and Bakhtiari's work is "with the residential part."[10]

21. This evidence was not contested in the Underlying Lawsuit, and the project was routinely referenced as a condominium project by both Queen and BMH. In Plaintiff's Response to Roka's Motion for Summary Judgment, Plaintiff described the event giving rise to the Underlying Lawsuit by identifying the project as a condominium project.[11] BMH's Motion for Summary Judgment in the Underlying Lawsuit similarly recognized that the case arose from "a construction site injury that occurred at a condominium development…"[12] Additionally, the Final Judgment in the underlying case also confirmed that the jury found that BMH exercised sufficient control over the "Destination Condominiums jobsite" where the underlying plaintiff was allegedly injured.[13] These are just a few examples of the routine use of this extrinsic evidence in the Underlying Lawsuit. This evidence was also routinely referenced in other depositions and pleadings in the Underlying Lawsuit. Both parties, and the Court, referred to this as a condominium project. Thus, this critical coverage fact does not overlap with liability issues in the Underlying Lawsuit.

22. Admiral also seeks a declaration that it has no duty to indemnify BMH for any settlement or judgment in the Underlying Lawsuit under the Admiral Policy by virtue of the RESIDENTIAL CONSTRUCTION ACTIVITIES EXCLUSION (ABSOLUTE) endorsement.

---

[9] BMH Corp. Rep. (Arman Bakhtiari) Deposition is attached hereto as Exhibit "A-6," p. 10, ln. 10–13; p. 11, ln. 13 – p. 12, ln. 5; p. 13, ln. 5–10; p. 13, ln. 24 – p. 14, ln. 11.
[10] Exhibit "A-6," p. 10, ln. 25 – p. 11, ln. 7.
[11] Exhibit "A-4," p. 1.
[12] Exhibit "A-3," p. 1.
[13] Exhibit "A-5," p. 1.

This declaratory judgment on the duty to indemnify is also ripe for determination based upon the *Griffin* exception. Here, because there exists no duty to defend, and the same facts that preclude a duty to defend also preclude any possible duty to indemnify, the decision on indemnity can properly be decided at this time. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997).

23. Alternatively, Admiral seeks a declaration that it has no duty to defend BMH in the Underlying Lawsuit by virtue of the Workers' Compensation and Similar Laws exclusion set forth in the Admiral Policy.

24. Alternatively, Admiral seeks a declaration that it has no duty to indemnify BMH for any settlement or judgment in the Underlying Lawsuit by virtue of the Workers' Compensation and Similar Laws exclusion set forth in the Admiral Policy.

25. Alternatively, Admiral seeks a declaration that it has no duty to defend BMH in the Underlying Lawsuit by virtue of the Employer's Liability exclusion set forth in the Admiral Policy.

26. Alternatively, Admiral seeks a declaration that it has no duty to indemnify BMH for any settlement or judgment in the Underlying Lawsuit by virtue of the Employer's Liability exclusion set forth in the Admiral Policy.

27. Alternatively, Admiral seeks a declaration that it has no duty to defend BMH in the Underlying Lawsuit by virtue of the CONDOMINIUM CONVERSION EXCLUSION endorsement set forth in the Admiral Policy.

28. Alternatively, Admiral seeks a declaration that it has no duty to indemnify BMH for any settlement or judgment in the Underlying Lawsuit by virtue of the CONDOMINIUM CONVERSION EXCLUSION endorsement set forth in the Admiral Policy.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Admiral Insurance Company, prays for Declaratory Judgment in favor of Admiral Insurance Company and against the Defendants, BMH As-Built USA of Texas, Inc. and Caleb Queen, for declaratory relief as follows:

1) A declaration that no duty to defend exists in the Underlying Lawsuit based upon the RESIDENTIAL CONSTRUCTION ACTIVITIES EXCLUSION (ABSOLUTE) in the Admiral Policy;

2) A declaration that no duty to indemnify in the Underlying Lawsuit exists based upon the RESIDENTIAL CONSTRUCTION ACTIVITIES EXCLUSION (ABSOLUTE) in the Admiral Policy;

3) A declaration that no duty to defend exists in the Underlying Lawsuit based upon the Workers' Compensation and Similar Laws exclusion in the Admiral Policy;

4) A declaration that no duty to indemnify in the Underlying Lawsuit exists based upon the Workers' Compensation and Similar Laws exclusion in the Admiral Policy;

5) A declaration that no duty to defend exists in the Underlying Lawsuit based upon the Employer's Liability exclusion in the Admiral Policy;

6) A declaration that no duty to indemnify in the Underlying Lawsuit exists based upon the Employer's Liability exclusion in the Admiral Policy;

7) A declaration that no duty to defend exists in the Underlying Lawsuit based upon the CONDOMINIUM CONVERSION EXCLUSION in the Admiral Policy; and

8) A declaration that no duty to indemnify in the Underlying Lawsuit exists based upon CONDOMINIUM CONVERSION EXCLUSION in the Admiral Policy.

Plaintiff, Admiral Insurance Company, also prays for recovery of reasonable and necessary attorneys' fees and costs incurred in prosecuting this action, as well as costs of Court, prejudgment and post-judgment interest at the maximum rate provided by law, and for such other and further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**RYMER, ECHOLS &**
**NELSON-ARCHER, P.C.**

By: ______________________________

Nathan M. Rymer
State Bar No. 00792814
2603 Augusta Drive, Suite 1270
Houston, Texas 77057
T: (713) 626-1550
F: (713) 626-1558
Email: nrymer@resnlaw.com

**FEE, SMITH & SHARP LLP**

By: _*/s/ Travis Casey (by permission)*

Travis M. Casey
State Bar No. 24087268
13155 Noel Road, Suite 1000
Dallas, Texas 75240
T: (972) 980-3271
Email: tcasey@feesmith.com

**ATTORNEYS FOR PLAINTIFF**
**ADMIRAL INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served on all known counsel of record by the Court's e-filing system, in accordance with the Federal Rules of Civil Procedure, on October 2, 2026.

Nathan M. Rymer